**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| A.M. and J.K., *individually and on behalf of all others similarly situated,* | **Case No. 1:24-cv-07559** |
| Plaintiffs, | **DEFENDANT ADVANCED REPRODUCTIVE HEALTH CENTER, LTD. D/B/A CHICAGO IVF'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT OR IN THE ALTERNATIVE MOTION TO STRIKE CLASS ALLEGATIONS AND MEMORANDUM OF POINTS AND AUTHORITIES HERETO** |
| v. | |
| ADVANCED REPRODUCTIVE HEALTH CENTER, LTD. d/b/a CHICAGO IVF, | |
| Defendant. | |

      Defendant Advanced Reproductive Health Center, LTD d/b/a Chicago IVF (Chicago IVF"), by its counsel, respectfully moves to dismiss this action in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) because this Court lacks subject-matter jurisdiction, and the Plaintiffs fails to state a claim upon which relief can be granted. Alternatively, Chicago IVF respectfully moves to strike the class allegations pursuant to Fed. R. Civ. Pro. Fed. 23(c)(1)(A) and 23(d)(1)(D) as Plaintiffs are unable to maintain a class pursuant to Fed. R. Civ. P. 23(a) and (b). The grounds for this motion are more fully set forth in the brief filed with this motion.

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................1

II. STATEMENT OF RELEVANT FACTS ...........................................................................1

III. THE COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) BECAUSE PLAINTIFFS FAIL TO TRACE THE ALLEGED ADVERTISEMENT TO CHICAGO IVF ......................................................................2

IV. THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT PRIVATE INFORMATION WAS TRANSMITTED. ........................................................3

    A. Plaintiffs fail to allege that the Tracking Technologies collected PHI. ..................4

    B. Plaintiffs fail to allege that the Tracking Technologies collected PII. ....................5

    C. Plaintiffs fail to allege that the Tracking Technologies collected IIHI. ..................6

    D. Plaintiffs' ECPA claim is legally deficient because the Party Exception applies and is not displaced by the Crime Tort Exception. .....................................7

    E. Plaintiffs' negligence claim is legally deficient because the alleged Tracking Technologies did not transmit Private Information and Plaintiffs fail to allege that they received advertisement from Chicago IVF. ........................9

    F. Plaintiff's unjust enrichment claim must be dismissed because it is not recognized as an independent cause of action under Illinois Law. .........................9

    G. Plaintiffs' Illinois Eavesdropping Statute claim is legally deficient because the alleged Tracking Technologies did not transmit Private Information. ............10

V. THE CLASS ALLEGATIONS MUST BE DISMISSED BECAUSE PLAINTIFFS ARE UNABLE TO CERTIFY A CLASS EVEN WITH DISCOVERY ................................................................................................................11

VI. CONCLUSION ................................................................................................................13

2

## TABLE OF AUTHORITIES

**Case**                                                          **Page**

*A.D. v. Aspen Dental Mgmt., Inc.,*
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024).................................................10,11

*Am. Hosp. Ass'n v. Becerra,*
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)...............................6

*Aprill v. Aquila*, No. 20 C 04657,
2022 WL 614984 (N.D. Ill. Mar. 1, 2022)...........................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................3

*B.K. v. Eisenhower Med. Ctr.,*
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ........................5

*Brown v. Learfield Commc'ns, LLC,*
No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024),
*appeal dismissed sub nom. Brown v. Learfield Commc'ns, L.L.C.,*
No. 24-50632, 2024 WL 5380272 (5th Cir. Nov. 13, 2024) ...............................................8,9

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...............................................................................................10

*Cole v. Quest Diagnostics, Inc.,*
No. 2:23-CV-20647-WJM, 2024 WL 3272789 (D.N.J. July 2, 2024),
*opinion vacated on reconsideration,* No. 2:23-CV-20647-WJM,
2025 WL 88703 (D.N.J. Jan. 14, 2025) ...............................................................................5

*Cousin v. Sharp Healthcare,*
681 F. Supp. 3d 1117 (S.D. Cal. 2023)................................................................................4

*De Medicis v. Ally Bank*,
No. 21 CIV. 6799 (NSR), 2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022)..............................2

*Doe v. Davita Inc.,*
No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ....................5

*Doe v. Farmers' Union Hospital Association d/b/a Great Plains Medical Center*,
No. CJ-2024-71 (Beckham County, OK, Oct. 16, 2024)......................................................5

*Doe v. Kaiser Found. Health Plan, Inc.,*

No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...........................9

*Doe v. Upperline Health, Inc.*,
No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503 (S.D. Ind. Sept. 24, 2024).................5

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023) ...............................................................................6

*Harris v. Rust-Oleum Corp.*,
No. 21-CV-01376, 2022 WL 952743 (N.D. Ill. Mar. 30, 2022)...........................................11

*Hill v. Wells Fargo Bank, N.A.*,
946 F. Supp. 2d 817 (N.D. Ill. 2013) ...................................................................................12

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024) ............5,6

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................13

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)...................................................................................................5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................8

*Jones v. BRG Sports, Inc.*,
No. 18 C 7250, 2019 WL 3554374 (N.D. Ill. Aug. 1, 2019)................................................12

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ....................................4

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................................................................................7

*Martinez v. D2C, LLC*,
No. 23-21394-CIV, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) .........................................12,13

*Nater v. State Farm Mut. Auto. Ins. Co.*,
No. 23-CV-1408-JES, 2024 WL 2155249 (C.D. Ill. May 14, 2024) ....................................2

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ........................4

*Okash v. Essentia Health*,
No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024)..........................9

*Ramirez v. Smart Corp.*,
371 Ill. App. 3d 797 (2007) ...............................................10

*Rand v. Eyemart Express, LLC*,
No. 3:24-CV-000621-N, 2024 WL 4376162 (N.D. Tex. Oct. 1, 2024) ...........................5,11

*Resnick v. AvMed, Inc.*,
693 F.3d 1317, 1326 (11th Cir. 2012) ...............................2

*Rodriguez v. Fastmed Urgent Care*,
*P.C.* No. 5:23-CV-403-D, 2024 WL 3965719 (E.D.N.C. July 24, 2024)...........................8

*Roe v. Amgen Inc.*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024),
*reconsideration denied sub nom. Doe v. Amgen, Inc.*, No. 2:23-CV-07448-MCS-SSC,
2024 WL 3811251 (C.D. Cal. Aug. 13, 2024).....................................9

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024)................7

*Santoro v. Tower Health*,
No. CV 22-4580, 2024 WL 4771398 (E.D. Pa. Nov. 13, 2024)...........................5

*Smart v. Main Line Health*,
No. CV 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) ...........................5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) .....................4

*Smith v. Trinity Broad. of Texas, Inc.*,
No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557 (C.D. Cal. Sept. 27, 2024).................5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....................................................................2

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024).........................7,8

*United States v. Diekemper*,
604 F.3d 345 (7th Cir. 2010) .........................................................2

*Vasil v. Kiip, Inc.*,
No. 16-CV-09937, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018)...........................11

*Wolfkiel v. Intersections Ins. Servs.*,

5

303 F.R.D. 287 (N.D. Ill. 2014)........................................................................12

**Rule**

Fed. R. Civ. P. 12(b)(1)......................................................................*passim*

Fed. R. Civ. P. 12(b)(6)......................................................................*passim*

Fed. R. Civ. P. 23.............................................................................*passim*

Fed. R. Civ. P. 23(a)(1)................................................................................11

Fed. R. Civ. P. 23(b)(2)................................................................................13

Fed. R. Civ. P. 22(b)(3)................................................................................13

Fed. R. Civ. P. 23(c)(1)(A) ...........................................................*passim*

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................1,14

**Statute**

720 ILCS § 5/14-2(a)(3) ...............................................................................10

720 ILCS § 5/14-2(a)(4) ...............................................................................10

720 ILCS § 5/14-2(a)(5) ...............................................................................10

18 U.S.C. § 2511(2)(d) ...................................................................................7

42 U.S.C. § 1320d-6(a)(3) ..............................................................................8

## I.      INTRODUCTION

Plaintiffs bring a putative class action based upon Chicago IVF's alleged implementation of the Meta Pixel, Google Analytics, and Google Tag Manager (collectively, "Tracking Technologies") on the public section of its website[1] (the "Website") (the "Complaint"). *See* ECF No. 27. However, as explained below, the Complaint must be dismissed because Plaintiffs (i) fail to allege that they received targeted advertisement from Chicago IVF; and (ii) fail to allege that Chicago IVF transmitted protected health information ("PHI"), personally identifiable information ("PII") or individually identifiable health information ("IIHI") (collectively, "Private Information"). Alternatively, the class allegations must be stricken because Plaintiffs are unable to certify a class even with the benefit of discovery.

## II.     STATEMENT OF RELEVANT FACTS

Plaintiffs allege that Chicago IVF installed Tracking Technologies on the following webpages of its Website:

- https://www.chicagoivf.com/fertility-treatment/iui-artificial-insemination
- https://chicagoivf.securepayments.cardpointe.com/pay
- https://portal.chicago-ivf.com/PatientPortal
- https://www.chicagoivf.com/locations/fertility-clinics/naperville-western-chicagosuburbs
- https://www.chicagoivf.com/about/fertility-specialists/natalie-schultz-md

(collectively, the "URLs"). *Id*., ¶ 50.[2] Plaintiffs allege that the URLs are considered PHI, and that together with a visitor's Facebook ID ("FID"), this constitutes IIHI. Plaintiffs claim they last visited the Website in 2021 and the Tracking Technologies transmitted their IIHI to Facebook and Google, which caused them to "beg[in] receiving advertisements on their Meta accounts (Facebook and/or

---

[1] https://www.chicagoivf.com

[2] Notably, Plaintiffs fail to plead factual allegations that the Tracking Technologies were implemented within the Patient Portal after a visitor enters their log-in credentials. *See* Complaint, *generally*.

1

Instagram) for **other fertility clinics** that provide fertility treatment." *See Id.,* ¶¶35, 39, 44. Plaintiffs do not allege that that they received advertisements from Chicago IVF. *See Id., generally.*

## III.   THE COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) BECAUSE PLAINTIFFS FAIL TO TRACE THE ALLEGED ADVERTISEMENT TO CHICAGO IVF.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), plaintiffs must allege that they "suffered an injury in fact" that is "traceable to the challenged conduct of the defendant[.]" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016). "Traceability measures causation." *Nater v. State Farm Mut. Auto. Ins. Co.,* No. 23-CV-1408-JES, 2024 WL 2155249, at *5 (C.D. Ill. May 14, 2024) (internal citation omitted). "It does so to ensure the injury-in-fact is 'not the result of the independent action of some third party not before the court.'" *Id.* (internal citation omitted). To satisfy traceability, allegations must "be supported by more than unadorned speculation." *United States v. Diekemper,* 604 F.3d 345, 350 (7th Cir. 2010). Furthermore, the "pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1326 (11th Cir. 2012).

Here, Plaintiffs allege that "after Plaintiffs provided information to Defendant regarding their Personal Information, Plaintiffs both began receiving advertisements on their Meta accounts (Facebook and/or Instagram) **for other fertility clinics** that provide fertility treatment." *See* Complaint, ¶ 44. However, Plaintiffs fail to establish a temporal relationship because they **fail to allege when they received the alleged advertisement**, which is material because "the longer the time span…the stronger the non-temporal nexus between the two incidents must be for a plaintiff to sufficiently allege causation." *De Medicis v. Ally Bank*, No. 21 CIV. 6799 (NSR), 2022 WL 3043669, at *7 (S.D.N.Y. Aug. 2, 2022) (*citing Resnick*, 693 F.3d 1317, 1327); *see also Doe v. Post Acute Medical, LLC,* No. 1:24-CV-547, 2025 WL 511069, at *8 (M.D. Pa. Feb. 14, 2025)

2

("That Doe does not allege a temporal connection between his use of defendants' website and the appearance of the advertisements further weakens the causal inference from the allegations in the complaint. Other courts have dismissed claims based upon similarly amorphous allegations."); *see also Nienaber v. Overlake Hosp. Med. Ctr.,* 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024) (noting that claims regarding specific information that plaintiff submitted online and causal connection with resulting advertisements is within plaintiff's control and should not require discovery). Additionally, Plaintiffs fail to establish a logical relationship because they fail to allege that they received advertisement from Chicago IVF. *See* Complaint, *generally.* Rather, Plaintiffs allege that **they received advertisement from its competitors**. *See Id.*, ¶ 44; *see also Post Acute Medical, LLC,* 2025 WL 511069, at *8 ("Doe, on the other hand, includes no facts to support the conclusory allegation that the purported disclosure led to his receipt of targeted advertisements. The complaint does not specify when the ads began to appear, and there is not a direct logical correlation between the information Doe entered into defendants' system…and the advertisements he later received."). Furthermore, Plaintiffs fail to explain why Chicago IVF would implement Tracking Technologies on its Website in order to benefit its competitors. This conduct suggests that the targeted advertisements are the result of Plaintiffs online searches for fertility clinics, **not** their use of Defendant's website.

## IV.    THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6) BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT PRIVATE INFORMATION WAS TRANSMITTED.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, even if this Court finds that Plaintiffs have sufficient standing under Rule 12(b)(1), Plaintiffs' claims still fail

under Rule 12(b)(6) and must be dismissed because the alleged Tracking Technologies did not collect Private Information.

**A.      Plaintiffs fail to allege that the Tracking Technologies collected PHI.**

The Complaint must be dismissed because courts throughout the country have continuously rejected Plaintiffs' argument that URLs are considered PHI. *See Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) ("Plaintiff['s] argument fails because Facebook did not collect 'protected health information.'…These pages contain general health information that is accessible to the public at large. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition of an individual.'"); *Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1123–24 (S.D. Cal. 2023) ("Plaintiffs allege that they used www.sharp.com, a public website, to 'research ... doctors,' 'look for providers,' and 'search for medical specialists' and that through the sharing of this data, Defendant allowed Meta to collect their sensitive medical information. However, other courts have held that this type of data collection is not considered 'Protected Health Information'…The Court therefore finds that Plaintiffs cannot maintain their claims based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information."); *K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) ("Regarding the Public Website, Defendant argues that URL browsing data and search queries are not PHI [Protected Health Information]. Plaintiff alleges in her complaint that she used the Public Website to search for burn specialists and burn treatments. The generic search queries created during such browsing activity, however, do not

4

constitute PHI.").[3] Here, at best the URLs direct a visitor to webpages within the public section of the Website which contain general health information that is not PHI.

### B.    Plaintiffs fail to allege that the Tracking Technologies collected PII.

The Complaint must be dismissed because Meta itself and courts throughout the country have continuously rejected Plaintiffs' argument that FIDs are considered PII. Indeed, Meta has stated a "User ID is a string of numbers that doesn't personally identify you[.]" *See How usernames and user IDs are used on Facebook profiles, Facebook*.[4] The Third Circuit reaffirmed Meta's description of a FID, and held that "static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information'...at least by themselves [emphasis added]." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016); *see also Smith v. Trinity Broad. of Texas, Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) ("Smith fails to allege that her FID provides sufficient identifying information. To claim that her FID permits Meta to identify Smith, she must establish that (1) her Facebook profile is publicly accessible and (2) includes sufficient identifying

---

[3] *see also Doe v. Davita Inc.,* No. 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) (same); *B.K. v. Eisenhower Med. Ctr.,* No. EDCV232092JGBKKX, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (same); *Santoro v. Tower Health*, No. CV 22-4580, 2024 WL 4771398, at *5 (E.D. Pa. Nov. 13, 2024) (same); *Rand v. Eyemart Express, LLC*, No. 3:24-CV-000621-N, 2024 WL 4376162, at *3 (N.D. Tex. Oct. 1, 2024) (same); *Doe v. Upperline Health, Inc.,* No. 1:23-CV-01261-RLY-CSW, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024) (same; *Cole v. Quest Diagnostics, Inc.,* No. 2:23-CV-20647-WJM, 2024 WL 3272789, at *5 (D.N.J. July 2, 2024), *opinion vacated on reconsideration,* No. 2:23-CV-20647-WJM, 2025 WL 88703 (D.N.J. Jan. 14, 2025) (same); *Smart v. Main Line Health,* No. CV 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) (same); *Doe v. Farmers' Union Hospital Association d/b/a Great Plains Medical Center*, No. CJ-2024-71, pg. 16 (Beckham County, OK, Oct. 16, 2024) (same);

[4] *See* https://www.facebook.com/help/150193685051184/. Pursuant to Federal Rule of Evidence 201(b), Chicago IVF requests this Court take judicial notice of this publicly-accessible Meta article. See *Heerde v. Learfield Commc'ns, LLC,* No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (taking judicial notice of a Meta article published online).

information…However, Smith does not indicate that her profile is public and contains any identifying information or photos. Rather than allege what is on her personal Facebook profile, Smith merely states that the FID is PII because leads others to her personal profile."); *Heerde,* 2024 WL 3573874, at *4 ("private profiles may not be viewable even if someone has the FID") (Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *Edwards v. Learfield Commc'ns, LLC,* 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023) (the complaint "contains no allegation as to what information was actually included on [their Facebook] profile[s.]"). Here, Plaintiffs merely allege that they "maintained active Facebook accounts during the time they provided their Private Information to Defendant via its Website." *See* Complaint, ¶ 43. However, Plaintiffs fail to allege the privacy settings of their Facebook accounts, what information was voluntarily made available on their Facebook accounts, or that *their FIDs* were transmitted to Meta. *See Id., generally.*

### C. Plaintiffs fail to allege that the Tracking Technologies collected IIHI.

The Complaint must be dismissed because courts throughout the country have continuously rejected Plaintiffs' argument that the combination of URLs and static digital identifiers are considered IIHI. Indeed, the Complaint cites to guidance issued by the U.S. Department of Health and Human Services ("HHS") relating to a HIPAA covered entity's use of tracking technologies (the "Guidance"). *See Id.,* ¶ 16, fn. 15. However, as Plaintiffs' concede, the Guidance was vacated in *Am. Hosp. Ass'n v. Becerra* and held to be "unlawful, and…promulgated in clear excess of HHS's authority under HIPAA." *Id.,* No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024). The Guidance formerly "provided several hypotheticals that trigger HIPAA obligations" where an online technology connects (1) an individual's IP address with (2)

a visit to the unauthenticated public section of a website which contains information relating to specific health conditions or healthcare providers (the "Proscribed Combination"). *Id.,* at *2. *Am. Hosp. Ass'n* held that "the Proscribed Combination could never fit HIPAA's definition" of IIHI. *Id*., at *14. In holding so, *Am. Hosp. Ass'n* relied on this Court's decision in *Kurowski v. Rush Sys. for Health,* which also held that plaintiff's "allegations are far too vague to allow an inference to be drawn that [defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata." *Id*., 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023). Here, akin to the Prescribed Combination, Plaintiffs allege that the Tracking Technologies transmitted a combination of URLs and FIDs, which do not constitute IIHI.

> **D. Plaintiffs' ECPA claim is legally deficient because the Party Exception applies and is not displaced by the Crime Tort Exception.**

The Electronic Communications Privacy Act ("ECPA") provides, in part, that:

> It shall be unlawful…for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception [the "Party Exception"] unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. [the "Crime-Tort Exception"]

18 U.S.C. § 2511(2)(d)). In analyzing the Party Exception, "courts across the country…agree that a [defendant] is a party to the communication where it uses a pixel to track activity on its website." *R.S. v. Prime Healthcare Servs., Inc.,* No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609, at *2 (C.D. Cal. Aug. 7, 2024) (listing cases); *see also T.D. v. Piedmont Healthcare, Inc.,* No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *3 (N.D. Ga. Dec. 10, 2024) (same). Here, the Party Exception applies because Plaintiffs concede that "Defendant is a 'party to the communication' with respect to patient communications." *See* Complaint, ¶ 240.

Within the Complaint, Plaintiffs allege that the Crime-Tort Exception applies because Chicago IVF allegedly violated 42 U.S.C. § 1320d-6(a)(3) by implementing the alleged Tracking Technologies on its Website for "commercial advantage to increase revenue from existing patients and gain new patients[.]" *See* Complaint, ¶¶ 241, 245. However, Plaintiffs' allegations are meritless. First, Plaintiffs concede that a violation of 42 U.S.C. § 1320d-6(a)(3) is based on disclosure of "IIHI," which explained above did not occur here. *See Id.* Second, Chicago IVF did not obtain a commercial advantage, rather Plaintiffs concede that they "began receiving advertisements on their Meta accounts (Facebook and/or Instagram) for **other fertility clinics** that provide fertility treatment." *See Id.,* ¶ 44. Third, even if Chicago IVF obtained a commercial advantage, "the weight of persuasive authority in similar pixel tracking cases" have rejected Plaintiffs' argument. *Piedmont Healthcare, Inc.,* 2024 WL 5284883, at *3 (listing cases); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts…have found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.") (listing cases); *Rodriguez v. Fastmed Urgent Care, P.C.* No. 5:23-CV-403-D, 2024 WL 3965719 (E.D.N.C. July 24, 2024) ("merely alleging that FastMed intercepted and disclosed Rodriguez's information to Meta for commercial use or gain…does not equate to FastMed intercepting and disclosing Rodriguez's information 'for…purpose of committing any criminal or tortious act.'"); *Brown v. Learfield Commc'ns, LLC,* No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024), *appeal dismissed sub nom. Brown v. Learfield Commc'ns, L.L.C.,* No. 24-50632, 2024 WL 5380272 (5th Cir. Nov. 13, 2024) ("Plaintiff has not alleged that Learfield deliberately sought to harm Plaintiff by using marketing tools. Therefore, because Plaintiff has failed to allege an underlying crime or tort as well as an intent to commit a crime or tort, the

Wiretap Act claim is dismissed.").[5] Accordingly, as Plaintiffs concede that the primary purpose of the alleged implementation of the Tracking Technologies on the Website was not to injure Plaintiffs tortiously or criminally, the Crime-Tort Exception is inapplicable.

**E.  Plaintiffs' negligence claim is legally deficient because the alleged Tracking Technologies did not transmit Private Information and Plaintiffs fail to allege that they received advertisement from Chicago IVF.**

To state a claim for negligence under Illinois law, "a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015). Here, Plaintiffs fail to satisfy each of the aforementioned elements because as explained above, Chicago IVF did not transmit Private Information and Plaintiffs fail to allege that they received advertisements from Chicago IVF. *See* Complaint, *generally*. Rather, Plaintiffs concede that they "began receiving advertisements on their Meta accounts (Facebook and/or Instagram) for **other fertility clinics** that provide fertility treatment." *See Id*., ¶ 44.

**F.  Plaintiff's' unjust enrichment claim must be dismissed because it is not recognized as an independent cause of action under Illinois Law.**

To state a claim for unjust enrichment under Illinois law, "the plaintiff must allege that the defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment." *Ramirez v. Smart Corp.,* 371 Ill. App. 3d 797, 808 (2007). However, as Your Honor has held, "[u]njust enrichment does not constitute an independent cause of action."*Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *16 (N.D. Ill. Mar. 1, 2022). Additionally, if "an unjust

---

[5] *see also Okash v. Essentia Health,* No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)*; Doe v. Kaiser Found. Health Plan, Inc.,* No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (same); *Roe v. Amgen Inc.,* No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024), *reconsideration denied sub nom. Doe v. Amgen, Inc.,* No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) (same).

enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be…stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also A.D. v. Aspen Dental Mgmt., Inc.,* No. 24 C 1404, 2024 WL 4119153, at *9 (N.D. Ill. Sept. 9, 2024) (in the context of tracking technology litigation, dismissing plaintiffs' unjust enrichment claim because it is premised on the same improper conduct alleged in the other claims). Here, Plaintiffs' unjust enrichment claim within "Count III" must be dismissed because it cannot be pled as an independent cause of action and it is based on the same conduct alleged in the ECPA, negligence, and IES claims. *See* Complaint, *generally*.

### G. Plaintiffs' Illinois Eavesdropping Statute claim is legally deficient because the alleged Tracking Technologies did not transmit Private Information.

Plaintiffs allege that Chicago IVF violated sections 720 ILCS § 5/14-2(a)(3), (a)(4) and (a)(5) of the Illinois Eavesdropping Statute ("IES"), all of which relate to "private electronic communication," which is defined as

> [A]ny transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire…[or] computer…when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or United States Constitution. Electronic communication does not include any communication from a tracking device.

*Id.*; *See also* Complaint, ¶¶ 287, 289. However, Plaintiffs fail to allege that there was a transfer of private electronic communication because as explained above, Chicago IVF did not transmit Private Information and there is no reasonable expectation of privacy regarding the URLs, which direct a visitor to the **public webpages** of the Website. *See also Eyemart Express, LLC,* 2024 WL 4376162, at *4 ("Because Plaintiffs have failed to show that any IIHI was collected or transmitted, their IEA claim fails."). Additionally, Plaintiffs fail to allege that there was a transfer of private

electronic communication because they concede that they communicated with the Website using their "computer and mobile devices," which constitute tracking devices under the IES and therefore falls within the exception to the statute. *See* Complaint, ¶¶ 35, 39. *See Vasil v. Kiip, Inc.,* No. 16-CV-09937, 2018 WL 1156328, at *8 (N.D. Ill. Mar. 5, 2018) ("under the Illinois Eavesdropping Statute, a cell phone is a tracking device[.]"). Furthermore, Courts have previously rejected Plaintiffs' argument. *See Aspen Dental Mgmt., Inc.,* 2024 WL 4119153, at *4 (in the context of tracking technology litigation, holding that "720 ILCS 5/14-1(d) does not apply to the electronic communications about which plaintiffs complain.").

## V.    THE CLASS ALLEGATIONS MUST BE DISMISSED BECAUSE PLAINTIFFS ARE UNABLE TO CERTIFY A CLASS EVEN WITH DISCOVERY.

As another Court in this District held, "unlike other motions to strike, which are evaluated under Rule 12(f), a motion to strike class allegations falls under the purview of Rule 23."*Harris v. Rust-Oleum Corp.,* No. 21-CV-01376, 2022 WL 952743, at *4 (N.D. Ill. Mar. 30, 2022). "Given that Federal Rule of Civil Procedure 23(c)(1)(A) requires a federal district court to rule at 'an early practicable time after a person sues or is sued as a class representative ...whether to certify the action as a class action,' [this Court has] recognized that granting a motion to strike in some circumstances can be procedurally proper." *Id.*, at *3. Accordingly, that Court "held that a motion to strike class allegations ... is an appropriate device to determine whether the case will proceed as a class action." *Id.* (internal citation omitted); *see also Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *4 (N.D. Ill. Aug. 1, 2019) (same); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293–94 (N.D. Ill. 2014) (same). "Most often, motions to strike are granted when the defendant shows that the underlying class claims…require individualized inquiries[.]" *Id.*; *see also Jones*, 2019 WL 3554374, at *5–8 (same); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 832 (N.D. Ill. 2013) (same).

11

Applying the legal standards within Fed. R. Civ. P. 23, district courts have held that a class cannot be certified in the context of litigation involving tracking technologies. For instance, just recently in *Martinez v. D2C, LLC,* No. 23-21394-CIV, 2024 WL 4367406, at \*7 (S.D. Fla. Oct. 1, 2024), the Southern District of Florida denied class certification and rejected plaintiffs' "central theory that the mere presence of the Meta Pixel on Univision's website resulted in the transmission of tens of thousands of Univision subscribers' personally identifiable information from Univision to Meta." *Id.,* at \*6. Furthermore, the court held that in addition to merely visiting a website, the visitor must have also:

> (1) had a Facebook account at the time the video was selected;
> (2) used a web browser that didn't block the Pixel by default;
> (3) been simultaneously logged into the subscriber's own Facebook account while selecting the video;
> (4) been simultaneously logged into Facebook on the same device that the subscriber used to select the video;
> (5) been simultaneously logged into Facebook using the same browser through which the subscriber selected the video; and
> (6) not deployed any number of browser settings or add-on software that would have blocked the Pixel.

*Id.,* at \*7–8. Applying the above factors, the court held that plaintiffs are unable to meet the numerosity requirement of Rule 23(a)(1) even though "35,845 subscribers…viewed at least one prerecorded video on Univision's website" during the period the Meta Pixel was implemented." *Id.* at \*2. The Southern District of Florida is not the first jurisdiction to deny class certification in the context of litigation involving tracking technologies. For instance, in *In re Hulu Priv. Litig.,* the Northern District of California denied class certification because:

> the court cannot tell how potential class members reliably could establish by affidavit the answers to the potential questions: do you log into Facebook and Hulu from the same browser; do you log out of Facebook; do you set browser settings to clear cookies; and do you use software to block cookies?...The possibility of substantial pecuniary gain affects this analysis too…That incentive and the vagaries of subjective recollection makes this case different than the small-ticket consumer

> protection class actions that this district certifies routinely…Plaintiffs have not
> defined an ascertainable class.

*Id.*, No. C 11-03764 LB, 2014 WL 2758598, at *16 (N.D. Cal. June 17, 2014). The Northern

District of California further held that Fed. R. Civ. P. 23(b)(2) and (b)(3) requirements were not

satisfied because:

> In the end, the substantial issues about remaining logged into Facebook and clearing
> and blocking cookies mean that the court cannot conclude on this record that the
> common issues predominate over the individual ones…Given that even the court's
> best guess at subclassing would not address the issues about ascertainability and
> identify the class members, the court finds on this record that common issues do
> not predominate…[B]ased on the court's holding that a class is not ascertainable on
> this record, class treatment is not superior.

*Id.*, 2014 WL 2758598, at *22-23. In contrast to *Martinez* and *In re Hulu Priv. Litig*, there does

not appear to be an order in any federal jurisdiction which has certified a class in the context of

litigation involving tracking technologies.

Here, Plaintiffs notably seek to represent a nationwide class defined as "all individuals

residing in the United States who used Defendant's Website and had their Private Information

shared with unauthorized third parties including, but not limited to, Facebook during the applicable

statutory period." *See* Complaint, ¶205. However, Plaintiffs are unable to maintain a class because

as explained above, similar to the plaintiffs in *Martinez* and *In re Hulu Priv. Litig*, Plaintiffs' central

theory is that the alleged mere presence of Tracking Technologies resulted in the unauthorized

disclosure of "at least thousands" of unique visitors' IIHI. *See Id.*, ¶212. Accordingly, as Plaintiffs

will be unable to satisfy the Fed. R. Civ. P. 23 requirements even with the benefit of discovery,

Plaintiffs' class allegations should be stricken to promote judicial economy.

**VI.      CONCLUSION**

WHEREFORE, Chicago IVF respectfully moves pursuant to Fed. R. Civ. P. 12(b)

(1) and 12(b)(6) for an order dismissing this matter. Alternatively, Chicago IFV respectfully moves

pursuant to Fed. R. Civ. Pro. Fed. 23(c)(1)(A) and 23(d)(1)(D) for an order striking the class allegations. Chicago IVF respectfully seeks such further relief as appears lawful, equitable, and just.

.

Respectfully submitted,

**WOOD SMITH HENNING & BERMAN, LLP**

*/s/ Ryan M. Neri*
Ryan M. Neri
Jonathon J. Ibarra
222 South Riverside Plaza Suite 640
Chicago, IL 60606

rneri@wshblaw.com
jibarra@wshblaw.com

**Attorneys for Defendant**
**Advanced Reproductive Health Center,**
**LTD. d/b/a Chicago IVF**

14

## **CERTIFICATE OF SERVICE**

I certify that on February 20, 2025, a true and correct copy of the foregoing instrument was served on all parties and/or counsel of record by electronic service in accordance with the FEDERAL RULES OF CIVIL PROCEDURE. My email address is rneri@wshblaw.com

BURSOR & FISHER, P.A.
Sarah N. Westcot
Stephen A. Beck
swestcot@bursor.com
sbeck@bursor.com

ALMEIDA LAW GROUP, LLC
David S. Almeida
Matthew J. Langley
david@almeidalawgroup.com
matt@almeidalawgroup.com

HEDIN LLP
Frank S. Hedin
fhedin@hedinllp.com

*/s/ Ryan M. Neri*
Ryan M. Neri