**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

A.M. and J.K., individually and on behalf of all
others similarly situated,

                    Plaintiffs,

      v.

ADVANCED REPRODUCTIVE HEALTH
CENTER, LTD. d/b/a CHICAGO IVF,

                    Defendant.

Case No. 1:24-cv-07559

Hon. Martha M. Pacold

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**THE CONSOLIDATED CLASS ACTION COMPLAINT**
**<u>OR IN THE ALTERNATIVE STRIKE THE CLASS ALLEGATIONS</u>**

## **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 3

I.      PLAINTIFFS WERE INJURED BY DEFENDANT'S CONDUCT ................................ 3

II.     PLAINTIFF STATES A CLAIM FOR RELIEF ................................................. 4

     A.     The Privacy Rule is Still Controlling Law ............................................ 4

     B.     Defendant Disclosed Plaintiffs' PHI Through the Tracking Technologies ........... 5

     C.     Defendant Disclosed Plaintiffs' PII Through the Tracking Technologies ............. 6

     D.     Defendant Intercepted Plaintiffs' Communications for a Criminal or Tortious Purpose ...................................................................................... 9

     E.     Plaintiffs State a Claim For Negligence Because Defendant Disclosed Plaintiffs' PHI ........................................................................................ 11

     F.     Plaintiffs State a Claim For Unjust Enrichment ................................... 12

     G.     Plaintiffs State a Claim Under Illinois' Eavesdropping Statute ................. 13

III.     DEFENDANT'S MOTION TO STRIKE THE CLASS ALLEGATIONS IS PREMATURE ............................................................................................... 13

CONCLUSION ............................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.,*
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................................................... 2, 7, 8

*Aceto Corp. v. TherapeuticsMD, Inc.,*
953 F.Supp.2d 1269 (S.D. Fla. 2013) ..................................................................... 12

*American Hospital Ass'n v. Becerra,*
738 F.Supp.3d 780 (N.D. Tex. June 20, 2024) ................................................... 4, 5, 8

*Aprill v. Aquila,*
2022 WL 614984 (N.D. Ill. Mar. 1, 2022) ............................................................. 12

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........................................................... 11

*Cooper v. Mount Sinai Health Systems, Inc.,*
742 F.Supp.3d 369 (S.D.N.Y. July 30, 2024) ..................................................... 9, 11

*Cousin v. Sharp Healthcare,*
681 F.Supp.3d 1117 (S.D. Cal. July 12, 2023) ......................................................... 6

*Cousin v. Sharp Healthcare,*
702 F.Supp.3d 967 (S.D. Cal. Nov. 17, 2023) .......................................................... 6

*De Medicis v. Ally Bank,*
2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022) ............................................................. 4

*Doe v. Genesis Health System,*
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ............................................................ 3

*Doe v. Post Acute Medical, LLC*
2025 WL 511069 (M.D. Pa. Feb. 14, 2025) .............................................................. 4

*Edwards v. Learfield Communications, LLC,*
697 F.Supp.3d 1297 (N.D. Fla. Oct. 6, 2023) .......................................................... 9

*Foman v. Davis,*
371 U.S. 178 (1962) ................................................................................................. 15

*Golden v. NBCUniversal Media, LLC,*
688 F.Supp.3d 150 (S.D.N.Y. Aug. 23, 2023) .......................................................... 5

ii

*Hartley v. Univ. of Chicago Med. Ctr.*,
  2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ............................................................. 7

*In re Grp. Health Plan Litig.*,
  2023 WL 8850243 (D. Minn. Dec. 21, 2023) ........................................................ 10

*In re Hulu Priv. Litig.*,
  2014 WL 2758598 (N.D. Cal. June 17, 2014) ........................................................ 14

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................................. 10

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) .................................................................................. 9

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ..................................................... 14, 15

*K.L. v. Legacy Health*,
  2024 WL 4794657 (D. Or. Nov. 14, 2024) .............................................................. 6

*Kane v. Univ. of Rochester*,
  2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ...................................................... 10

*Kurowski v. Rush Sys. For Health*,
  2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......................................... 2, 7, 10, 13

*Martinez v. D2C, LLC*,
  2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ...................................................... 14, 15

*Mekhail v. N. Mem'l Health Care*,
  726 F. Supp. 3d 916 (D. Minn. 2024) ................................................................... 10

*Murdock-Alexander v. Tempsnow Employment*,
  2016 WL 6833961 (N.D. Ill. Nov. 21, 2016) ........................................................ 14

*Nienaber v. Overlake Hospital Medical Center*,
  733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024) ............................................... 4, 6

*R.C. v. Walgreen Co.*,
  733 F.Supp.3d 876 (C.D. Cal. May 9, 2024) ...................................................... 8, 11

*Shirely v. Staffing Network Holdings, LLC*,
  2016 WL 6599951 (N.D. Ill. Nov. 8, 2016) .......................................................... 14

*Smith v. Facebook, Inc.*,
    262 F.Supp.3d 943 (N.D. Cal. May 9, 2017) ................................................................ 6, 7, 8, 9

*Smith v. Loyola University Medical Center*,
    2024 WL 3338941 (N.D. Ill. July 9, 2024) ....................................................................Passim

*St. Aubin v. Carbon Health Technologies, Inc.*,
    2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................................ 5, 6, 9

*Stein v. Edward-Elmhurst Health*,
    2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................................................ 2, 10, 11

*Sussman v. Am. Broad. Companies, Inc.*,
    186 F.3d 1200 (9th Cir. 1999) ................................................................ 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413, 141 S.Ct. 2190 (2021) ................................................................ 3

**STATUTES**

18 U.S.C. § 2511(2)(d) ................................................................ 10

18 U.S.C. § 2710(a)(3) ................................................................ 9

42 U.S.C. § 1320(d)(6) ................................................................ 5, 6, 8

## **INTRODUCTION**

Defendant Advanced Reproductive Health Center, Ltd. d/b/a Chicago IVF ("Defendant" or "Chicago IVF") operates a chain of fertility clinics in Illinois and Indiana. *See* Consolidated Class Action Complaint (ECF No. 27) ("Compl.") ¶ 4. Defendant encourages individuals struggling with infertility to book appointments through its website, chicagoivf.com (the "Website"). *Id.* ¶ 6. However, unbeknownst to consumers, Defendant discloses information related to their patients' protected health information ("PHI") with their healthcare provider's Website, including communications related to the their fertility treatments and the scheduling of medical appointments, to two of the world's largest technology and advertising companies, including Facebook and Google, without their patients' consent. *See, e.g., id.* Figures 1-6. Such information is not shared for the purpose of providing treatment, but rather, solely for the purpose of creating targeted advertising—allowing Facebook and Google to monetize the private information unlawfully disclosed to them. Facebook and Google utilize this information not only for Defendant's benefit, but also their own.

As a medical provider, Defendant has a duty to protect the health information it receives. The HIPAA Privacy Rule defines individually identifiable health information ("IIHI") as "*any information*…that—(A) is created *or received by a health care provider ...* (B) relates to the past, present, or future physical or mental health or condition of an individual, *the provision of health care to an individual*…and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." *Id.* ¶ 134 (emphasis added). PHI consists of all IIHI collected on a regulated entities' website. *Id.* ¶ 16 n. 15. This is true regardless of whether the individual has a preexisting relationship with the regulated entity like Defendant. *Id.*

1

Like all other putative class members, Plaintiffs regularly used Defendant's Website to, among other things, search for doctors, search for and communicate information regarding their fertility treatments, and schedule medical appointments for fertility treatment. *Id.* ¶¶ 37, 41. During this time, both Plaintiffs maintained an active social media account with Facebook. *Id.* ¶ 43. Unbeknownst to Plaintiffs, and without their consent, information related to their use of Defendant's Website, including information related to their medical appointment for fertility treatment, was intercepted through the Facebook Tracking Pixel, Google Analytics, and Google Tag Manager (collectively, the "Tracking Technologies." *Id.* ¶ 8. The Tracking Technologies are tracking codes Defendant embedded on its Website. *Id.* The information disclosed to Facebook and Google included Plaintiffs' Facebook ID, as well as PHI related to their medical consultations for fertility treatment. *Id*. ¶¶ 37, 41, Figures 1-6. Defendant's actions demonstrate a blatant disregard for its duties as a medical provider as well as its patients' privacy interests.

Courts in this district routinely recognize that this conduct is unlawful. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) ("Courts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA."); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("[Defendant] placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA]."); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (same); *Smith v. Loyola University Medical Center*, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (same). This case is no different. Defendant's motion to dismiss Plaintiffs' Complaint (ECF No. 28) ("MTD") should be dismissed in its entirety.

<u>**ARGUMENT**</u>

**I. PLAINTIFFS WERE INJURED BY DEFENDANT'S CONDUCT**

Defendant argues that Plaintiffs fail to establish Article III standing for all of their claims because they fail to allege the date when they received targeted advertising and fail to allege that they received targeted advertising from Defendant. *See* MTD at 2-3. This argument misrepresents Plaintiffs' allegations.

To establish standing under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 141 S.Ct. 2190, 2203 (2021).

Here, Plaintiffs do not allege an injury related to the receipt of targeted advertisements. Instead, Plaintiffs allege injuries stemming from Defendant's conduct in two ways. First, Plaintiffs allege an injury related to Defendant's invasion of Plaintiffs' "right to privacy [when it] unlawfully disclosed their Private Information." Compl. ¶ 51. Second, Plaintiffs allege that "Defendant's disclosure and interception harmed Plaintiffs and Class Members by not compensating them for the value of their Private Information." *Id.* ¶ 173. This information includes, for example, the scheduling of appointments for fertility treatment. *See id.* ¶¶ 37-38, 41-42, 114-15, Figures 5-6. Courts routinely find similar allegations to be sufficient to establish Article III standing. *See, e.g., Smith*, 2024 WL 3338941, at *4 ("Here, the plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information that, at this stage, is sufficient to confer standing[.]"); *Doe v. Genesis Health System*, 2024 WL 3890164, at *6 (C.D. Ill. Aug. 21, 2024) (holding that the plaintiff established standing for their claim under the Wiretap Act where "in addition to metadata, [defendant] disclosed class members' PII and PHI and that this could be linked to their Facebook IDs").

The authority relied upon by Defendant is inapposite. For example, *De Medicis v. Ally Bank* provides no guidance to this Court as it does not relate to the disclosure of medical information, nor does it concern the use of the Tracking Technologies. 2022 WL 3043669, at *1 (S.D.N.Y. Aug. 2, 2022) (allegations concerning the disclosure of login credentials to third-party service providers). Defendant's reliance on *Post Acute* is similarly misguided, as that case was silent as to whether the plaintiff had *standing* for his claims and focused exclusively on whether he had established *damages* for his negligence and consumer protection claims. *See* 2025 WL 511069, at *6-9 (M.D. Pa. Feb. 14, 2025). Finally, *Nienaber v. Overlake Hospital Medical Center* is distinguishable because there the plaintiffs failed to provide sufficient factual allegations to support their claims. *See* 733 F.Supp.3d 1072, 1083 (W.D. Wash. May 13, 2024) ("Plaintiff neither alleges that *she* tried to schedule an appointment through MyChart nor that *she* entered the type of medicine she sought or the type of appointment being scheduled (which would undoubtedly be protected health information), or that the Pixel transmitted *her* information to Facebook").

## II.  PLAINTIFF STATES A CLAIM FOR RELIEF

### A.  The Privacy Rule is Still Controlling Law

Defendant argues that Plaintiffs' claims must be dismissed due to the *Becerra* decision. MTD at 6-7. However, Plaintiffs' claims do not rely on vacated guidance issued by the U.S. Department of Health and Human Services ("HHS") as argued by Defendant. In that guidance, HHS attempted to expand the definition of IIHI in the "Proscribed Combination" to include an individual's IP address in certain circumstances, such as browsing a public webpage. *See American Hospital Ass'n v. Becerra*, 738 F.Supp.3d 780, 789. "IIHI is unambiguously defined as PHI that (1) 'relates to' and individual's 'past, present, or future physical or mental health or condition,' the individual's receipt of 'health care,' or the individual's 'payment for' healthcare; *and* (2)

4

'identifies the individual' or provides 'a reasonable basis to believe that the information can be used to identify the individual.'" *Id.* at 800-01 (quoting 42 U.S.C. § 1320d(6)).

The court in *Becerra* found this problematic under both requirements for IIHI. First, browsing a public webpage, at best, would only be "indicative" of the visitor's health or treatment status. *Id.* at 801. Second, the Proscribed Combination "does not and cannot identify an individual or the individual's PHI[.]" *Id.* at 802. The court in *Becerra* therefore determined that the "Proscribed Combination" could never fit HIPAA's definition of IIHI. *Id.* at 807.

The situation here is quite different, as it is not only IP addresses that are being disclosed, but device identifiers and Facebook IDs as well. Unlike an IP address, a patient's Facebook ID allows any ordinary person to look up the user's Facebook profile and name. *See* Compl. ¶ 88. Courts across the country consistently find that a Facebook ID constitutes PII. *Golden v. NBCUniversal Media, LLC*, 688 F.Supp.3d 150, 159 (S.D.N.Y. Aug. 23, 2023) ("Courts have uniformly held Facebook IDs to constitute PII[.]") (collecting cases). Moreover, here, Plaintiff did not merely browse one of Defendant's public webpages. Plaintiffs booked appointments for highly sensitive medical procedures (fertility treatment), which clearly relate to an "individual's receipt of health care." *See* Coml. ¶¶ 37-38, 41-42, Figures 5-6; 42 U.S.C. § 1320d(6); *see also St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (post-*Becerra* decision upholding a wiretap claim where "the URLs transmitted to Facebook and Google included…the reason for her medical appointment").

## B. Defendant Disclosed Plaintiffs' PHI Through the Tracking Technologies

Defendant argues that Plaintiffs' claims should be dismissed because "courts throughout the country have continuously rejected Plaintiffs' argument that URLs are considered PHI." MTD at 4. That is wrong.

Courts consistently find that disclosures made from the public portion of a website still qualify as PHI so long as they relate to the "'provision of health care to an individual.'" *Smith v. Loyola University Medical Center*, 2024 WL 3338941, at *6 (N.D. Ill. July 9, 2024 ) (quoting 42 U.S.C. § 1320(d)(6); *see also Nienaber*, 733 F.Supp.3d at 1083 ("Disclosure through publicly available webpages that, plausibly relate to the provision of healthcare of connect a particular user to a particular healthcare provider may be actionable."); *see also St. Aubin v. Carbon Health Technologies, Inc.,* 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (Upholding wiretap claim where "the URLs transmitted to Facebook and Google included…the reason for her medical appointment").

Defendant is correct that mere *browsing* activity is insufficient to support a cause of action. *See Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1124 (S.D. Cal. July 12, 2023)[1] ("The Court therefore finds that Plaintiffs cannot maintain their claims based upon the theory that Defendant's sharing of their browsing activity, collected on its publicly facing website, is a disclosure of their sensitive medical information."); *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 954-55 (N.D. Cal. May 9, 2017) (same); *K.L. v. Legacy Health*, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) (same).  However, this case does not merely involve browsing information, but rather, the scheduling of medical appointments for fertility treatment.  *See* Coml. ¶¶ 37-38, 41-42, Figures 5-6.

### C.    Defendant Disclosed Plaintiffs' PII Through the Tracking Technologies

Defendant argues that Plaintiffs' claims fail because a Facebook ID is not personally

---

[1] Notably, the court in *Cousin* later found the plaintiffs had plausibly alleged that PHI was disclosed after they filed an amended complaint.  *See Cousin v. Sharp Healthcare*, 702 F.Supp.3d 967, (S.D. Cal. Nov. 17, 2023) ("[T]he Court finds that [plaintiffs'] interactions on Defendant's website, while 'unauthenticated' or publicly facing, plausibly involve PHI.").

identifiable information.  MTD at 5.  Contrary to Defendant's claims, virtually identical allegations involving disclosures of medical information and the Facebook ID via the Meta Pixel have been found to constitute IIHI by every court in this district that has considered them. *See Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (holding that plaintiff's allegations that defendant disclosed "that she was seeking specific medical specialists, that she sought to obtain prescriptions of various medications, that she was seeking information about sexually transmitted diseases, and alleging that Meta sold this information to entities that sent her advertisements for medications that were relevant to specific conditions for which she was being treated" were sufficient to make plausible allegations of IIHI "that were acquired by Defendant and then disclosed to Meta."); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *4 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (holding that plaintiff's allegations that defendant "transmitted the name and location of her personal physician, as well as her physician's specialty" and "that this information was, in turn, used by at least Facebook to target her with particular advertising associated with her particular health conditions" supported a plausible inference that such information constituted IIHI within the meaning of HIPAA); *Loyola*, 2024 WL 3338941, at *7 (holding that transmission of plaintiffs' status as medical patients, content of their communications with LUMC's webpage, information about their medical appointments, location of treatments, specific medical providers, specific medical conditions and treatments, and other sensitive health information to third parties qualified as IIHI for purposes of HIPAA); *Aspen*, 2024 WL 4119153, at *3 (holding that transmission of "Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties" qualified as IIHI under HIPAA).

As noted, *supra*, HIPAA defines IIHI as information "that (1) 'relates to' an *individual's* 'past, present, or future physical or mental health or condition,' the individual's receipt of 'health care,' or the individual's 'payment for' healthcare; *and* (2) *'identifies the individual' or provides 'a reasonable basis to believe that the information can be used to identify the individual*.'" *American Hospital Ass'n v. Becerra*, 738 F.Supp.3d 780, 800-01 (quoting 42 U.S.C. § 1320d(6) (emphasis added)). Here, Plaintiffs have alleged that they "both maintained active Facebook accounts during the time they provided their Private Information to Defendant via its Website." Compl. ¶ 43. Plaintiffs further allege that the Facebook Tracking Pixel intercepts communications that disclose that a patient is scheduling an appointment for fertility treatment. *Id*. ¶ 114; *id* Figures 5-6. These interceptions also include the patient's Facebook ID, which allows any ordinary person to look up the user's Facebook profile and name. *Id.* ¶ 88. Courts in this district have found the disclosure of similar information to be personally identifiable. *See Aspen Dental*, 2024 WL 4119153, at *3 ("Plaintiffs' allegations regarding their individual experiences using Aspen's online platform—and the inferences drawn from those experiences— are sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and treatments to third parties. Such information qualifies as IIHI for purposes of HIPAA"). Similarly, Courts across the country consistently find that a Facebook ID constitutes identifiable information, including in cases like this. *See R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 889 (C.D. Cal. May 9, 2024) (finding the plaintiff's "private health information was rendered personally identifiable due to the [Facebook Tracking] Pixel's operation with Facebook cookies, which, working together, caused Plaintiffs' product selections to be transmitted via the [Facebook Tracking] Pixel alongside their unique Facebook ID. When Plaintiffs' browsing and shopping activities were connected to their Facebook IDs, that information became personally

8

identifiable."); *see also Cooper v. Mount Sinai Health Systems, Inc.*, 742 F.Supp.3d 369, 380 (S.D.N.Y. July 30, 2024); *Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *5.

The authority relied upon by Defendant is distinguishable. As a threshold matter, both cases relied upon by Defendant concern claims brought under the VPPA, which has its own narrow definition of "PII." *See Edwards v. Learfield Communications, LLC*, 697 F.Supp.3d 1297, 1307 (N.D. Fla. Oct. 6, 2023) ("[T]he VPPA only prohibits disclosing 'personally identifiable information'…[which] 'includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.'") (quoting 18 U.S.C. § 2710(a)(3)). Additionally, *In re Nickelodeon Consumer Priv. Litig.* did not concern the interception of Facebook IDs. 827 F.3d 262, 281-82 (3d Cir. 2016). In fact, the court in *In re Nickelodeon Consumer Priv. Litig.* determined that a Facebook ID *could* in fact constitute PII. *Id.* at 289 n.174 ("We note, however, that even a numeric identifier might qualify as [PII]…for example…[defendant] would display a Facebook 'Like' button next to that video by sending a coded request to Facebook's servers…[defendant] would [then] transmit that coded information to Facebook when it requested a 'Like' button in such a way that Facebook could easily identify an account holder's video viewing preferences."). Finally, the *Edwards* court held that the plaintiffs merely failed to allege that a Facebook ID was PII. *See* 697 F.Supp.3d at 1307 ("Plaintiffs have not alleged enough. At best, they plausibly allege that *sometimes* Facebook can use a [Facebook] ID to identify a particular person. They do not allege that Facebook ever used, or even can use, *their* [Facebook] IDs to identify *them* or *their* video-watching habits.").

### D. Defendant Intercepted Plaintiffs' Communications for a Criminal or Tortious Purpose

Defendant argues that Plaintiffs' claim under the Wiretap Act fails because Defendant was a party to the alleged intercepted communication. MTD at 7. However, the party exception

does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiffs' communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiffs' communications, including HIPAA's criminal prohibitions against disclosing IIHI and PHI without authorization. Compl. ¶¶ 147, 241-50. Specifically, Plaintiffs allege that Defendant disclosed information to Meta regarding their appointments for fertility treatment. *Id.* ¶¶ 37-38, 41-42. Such interceptions and disclosures were nearly identical to those shown in Figures 5-6 of the complaint. Multiple federal courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Kurowski*, 2023 WL 8544084, at *3 (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *Stein*, 2025 WL 580556, at *5 ("Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA.") (collecting cases); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("plaintiffs may be able to show

that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

Defendant's remaining argument regarding a commercial purpose for the interception fares no better. *See Stein*, 2025 WL 580556, at *6 ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper*, 742 F.Supp.3d at 381-82 (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain."); *Walgreen Co.*, 733 F.Supp.3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law.").

**E.    Plaintiffs State a Claim For Negligence Because Defendant Disclosed Plaintiffs' PHI**

Defendant argues that Plaintiffs' negligence claim should be dismissed for the sole reason that it claims that it "did not transmit Private Information." MTD at 9. That argument is wrong for the reasons discussed, *supra*. Plaintiffs have provided numerous detailed allegations as to the Tracking Technologies implemented on Defendant's Website. *See* Compl. ¶¶ 55-122. Both Plaintiffs used Defendant's Website to book appointments for fertility treatment. *Id.* ¶¶ 37, 41. The information provided in Figures 5-6 confirms that Defendant discloses its patients'

appointment information with Meta. Nothing more is required to establish that Defendant unlawfully disclosed Plaintiffs' PHI. *See Smith*, 2024 WL 3338941, at *7 (upholding negligence claim where the complaint alleges that the defendant "collected plaintiffs' nonpublic personal information and disseminated that information to unauthorized third parties.").

### F. Plaintiffs State a Claim For Unjust Enrichment

Defendant asserts that Plaintiffs' unjust enrichment claim must be dismissed because "it cannot be pled as an independent cause of action." MTD at 10. That is wrong. "While the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy, a plaintiff may maintain an unjust enrichment claim in the alternative to its legal claims." *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F.Supp.2d 1269, 1287 (S.D. Fla. 2013); *see also Aprill v. Aquila*, 2022 WL 614984, at *16 (N.D. Ill. Mar. 1, 2022) ("[T]he court concludes that a cause of action for unjust enrichment exists under Illinois law but relies upon [plaintiff] stating a separate viable claim.").

Here, Plaintiffs allege that they "conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information that Defendant collected from Plaintiffs and Class Members under the guise of keeping this information private. Defendant collected, used and disclosed this information for its own gain including for advertisement purposes, sale or trade for valuable services from third parties." Compl. ¶ 265. Additionally, "[t]he benefits that Defendant derived from Plaintiffs and Class Members was not offered by Plaintiffs and Class Members gratuitously and rightly belongs to Plaintiffs and Class Members. It would be against equity and good conscience for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts and trade practices alleged in this Complaint." *Id.* ¶ 271. And Plaintiffs have pled their unjust enrichment claim in

the alternative to their other claims. *Id.* ¶ 262. Because Plaintiffs may maintain their claim of unjust enrichment in the alternative, Defendant's motion should be denied. *See Kurowski*, 683 F.Supp.3d at 852 (finding plaintiff may allege unjust enrichment count in the alternative so long as there are no allegations of the existence of a contract between the parties).

### G. Plaintiffs State a Claim Under Illinois' Eavesdropping Statute

Defendant argues that Plaintiffs' claim under the Illinois Eavesdropping Statute must be dismissed because "there is no reasonable expectation of privacy regarding the URLs, which direct a visitor to the **public webpages** of the Website." MTD at 10 (emphasis in the original). That is wrong and misrepresents Plaintiffs' allegations.

Defendant's argument is wrong for the reasons discussed, *supra*. Plaintiffs have sufficiently alleged that Defendant incorporated the Tracking Technologies on its Website (Compl. ¶¶ 55-122), which resulted in the disclosure of its patients' PHI, including the scheduling of their medical appointments for fertility treatment. *Id.* ¶¶ 37, 41, Figures 5-6. Such disclosures were committed surreptitiously, without Plaintiffs' consent. *Id.* ¶ 285. Courts within this district have found similar allegations to be sufficient. *See Kurowski*, 683 F.Supp.3d at 853 (finding that the plaintiff alleged sufficient facts to show that defendant knowingly derived a benefit or information from the illegal use of an eavesdropping device"); *Smith*, 2024 WL 3338941, at*9-10.

## III. DEFENDANT'S MOTION TO STRIKE THE CLASS ALLEGATIONS IS PREMATURE

Defendant argues that the Court should strike Plaintiffs' class allegations because "there does not appear to be an order in any federal jurisdiction which has certified a class in the context of litigation involving tracking technologies." MTD at 13. That is wrong.

As a threshold matter, striking a plaintiff's class allegations prior to discovery and a

motion for class certification is a rare remedy. *Murdock-Alexander v. Tempsnow Employment*, 2016 WL 6833961, at \*4 (N.D. Ill. Nov. 21, 2016) (collecting cases). District courts routinely deny motions to strike class allegations as premature because it is inappropriate in most instances to strike class allegations in advance of the filing of a motion for class certification after an appropriate discovery period. *See, e.g., Shirely v. Staffing Network Holdings, LLC*, 2016 WL 6599951, at \*4 (N.D. Ill. Nov. 8, 2016) ("Determining whether the Rule 23 requirements have been satisfied requires a 'rigorous analysis,' and a court need not conduct an analysis before sufficient information has been presented."); *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class.").

Class actions in federal court are governed by Rule 23. Under this Rule, a class action is maintainable if several prerequisites are satisfied. Rather than attacking a specific prerequisite, Defendant advances the argument that the Court should preemptively strike Plaintiffs' class allegations because two other federal courts have denied class certifications in cases concerning claims brought under the Video Privacy Protection Act ("VPPA"). *See Martinez v. D2C, LLC*, 2024 WL 4367406, at \*7 (S.D. Fla. Oct. 1, 2024); *In re Hulu Priv. Litig.*, 2014 WL 2758598, at \*16 (N.D. Cal. June 17, 2014) (order denying class certification ***without prejudice***). This argument is rendered meritless by the recent decision in *Jancik v. WebMD LLC*, where a federal court granted class certification for claims involving the same tracking technology at issue here. 2025 WL 560705, at \*9-10 (N.D. Ga. Feb. 20, 2025). Like *Martinez* and *In re Hulu*, the *Jancik* case concerned the improper disclosure of protected information to Facebook. Unlike *Martinez* and *In re Hulu*, the plaintiffs in *Jancik* proposed a workable methodology for class certification. Rather than confront the numerous individualized questions that would arise from attempting to

14

rely solely on the records of the plaintiffs and defendant, the parties could instead rely on the records produced by the third parties themselves (i.e. Facebook).  *Compare Martinez*, 2024 WL 4367406, at *3 ("The Court has (1) no supportable way of guessing how many of these 15,000 were also using the same device on which they were logged in to their Facebook account as they used to access the Univision video; (2) no non-speculative basis for estimating how many of those subscribers were also logged into their Facebook account on the same web browser through which they accessed the Univision video; and then, (3) no meaningful way of surmising how many of those had not deployed any one of several mechanisms that would have blocked the Pixel."); *with Jancik*, 2025 WL 560705, at *6 ("If Meta is subpoenaed, it appears that the actual number of Class members can be determined relatively quickly.").  *Jancik* provides a roadmap for class certification in all cases involving the same types of tracking technologies, including the Tracking Technologies at issue here.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion should be denied in its entirety. Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.").

DATED: March 20, 2025                    Respectfully submitted,


                                         /s/ *Stephen A. Beck*

                                         **BURSOR & FISHER, P.A.**
                                         Sarah N. Westcot (*pro hac vice* forthcoming)
                                         Stephen A. Beck
                                         701 Brickell Avenue, Suite 2100
                                         Miami, FL 33131
                                         Telephone: (305) 330-5512
                                         Facsimile:  (305) 676-9006

E-Mail: swestcot@bursor.com
            sbeck@bursor.com


**ALMEIDA LAW GROUP, LLC**
David S. Almeida (ARDC 6285557)
Matthew J. Langley (ARDC 6337129)
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone: (312) 576-3024
Email: david@almeidalawgroup.com
            matt@almeidalawgroup.com

**HEDIN LLP**
Frank S. Hedin (FBN: 109698)
1395 Brickell Ave, Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Co-Lead Counsel for Plaintiffs*